David SPANN *v.* STATE of Arkansas

CR 96-733 944 S.W.2d 537

Supreme Court of Arkansas
Opinion delivered May 12, 1997

---

*William R. Simpson, Jr.*, Public Defender, by: *Jeffrey A. Weber*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant David Spann was convicted of first-degree murder and sentenced to life imprison-

ment. He raises two points on appeal: (1) the trial court erred by allowing the prosecutor to inform the jury about parole eligibility in the penalty phase; and (2) the trial court erred in refusing to give an instruction on voluntary manslaughter. Both points are meritless, and we affirm.

The facts of this case were developed at trial. On February 21, 1995, Spann shot and killed Carl Ahrens in Spann's house in Perry County. According to Barbara Wilcutt, who lived with Spann at the time of the shooting, she heard Spann arguing with another man about whether one of Spann's sons, Jacob Spann, had stolen equipment from the man. She testified that she went downstairs and watched the argument. Spann, she stated, was mad and turned white. There was no physical fighting, and the man did not threaten Spann. Spann, though, got a shotgun from the gun rack and shot the man. After shooting him, Spann placed a pocketknife in the victim's hand. Sarah Lucker, Wilcutt's 12-year-old daughter, confirmed the fact that Ahrens had nothing in his hands when Spann shot him.

Following the killing, Chief Deputy Ed Johnson of the Perry County Sheriff's Department responded to a call at 6:20 p.m. at the Spann residence. He collected the .410 single shot shotgun and found the opened pocketknife in the victim's hand. The victim also had a larger knife attached to his belt. According to a witness from the State Crime Lab, Ann Hoff, Ahrens was in close proximity to the shotgun when he was killed. Perry County Coroner Hank Bergen testified that the gunshot wound was to Ahrens's head and neck. Dr. William Sturner, chief medical examiner for the State, testified that both marijuana and alcohol were found in Ahrens's system.

Spann did not testify at his trial, but a second son, David Spann, Jr., testified about seeing Ahrens in an agitated condition and stated that Ahrens was drunk. David Spann, Jr., stated that he called the sheriff's department at his father's direction after the shooting. In closing argument, Spann's counsel contended before the jury that Spann lacked the purpose to kill Ahrens and that the murder was the result of a passionate argument. The jury returned

a verdict of guilty of first-degree murder and after the sentencing phase, sentenced Spann to life in prison.

Spann first complains that the trial court erred in permitting a jury instruction relating to parole and transfer when either a sentence of life imprisonment or a term of years is meted out by the jury. Prior to trial, Spann moved the trial court to exclude jury instructions, evidence, and argument relating to parole and transfer eligibility. The motion was denied at an omnibus hearing. During the sentencing phase, the trial court instructed the jury on meritorious good time and transfer to community supervision and then answered "No" to the jury's question about the possibility of parole after a life sentence.

The crux of Spann's argument on appeal is that this court announced a rule of evidence in 1971 when we held that it was improper for the trial court to inform the jury about transfer and parole eligibility. *See Andrews v. State*, 251 Ark. 279, 472 S.W.2d 86 (1971). Spann argues that the subsequent Act of the General Assembly permitting the same (Ark. Code Ann. § 16-97-103(1) (Supp. 1995)) must bow to the mixed rule of evidence and procedure announced in *Andrews v. State, supra*. We disagree.

We have recently answered this precise question against Spann's position in the case of *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997). In *Travis*, we concluded:

> Since the enactment of the criminal code, we have said that sentencing is controlled by statute. *See Cody v. State*, 326 Ark. 85, 929 S.W.2d 159 (1996); *Easley v. State*, 274 Ark. 215, 623 S.W.2d 189 (1981). Ark. Code Ann. § 16-97-103(1) was enacted as part of Act 535 of 1993, where the General Assembly made changes in procedures governing jury trials by providing for separate consideration of guilt and sentencing. Among other things, Act 535 defines what is "evidence relevant to sentencing," part of which includes parole eligibility.

> Simply put, Travis fails to cite to any express rule of this court with which Ark. Code Ann. § 16-97-103(1) conflicts. Our holdings to which Travis cites were handed down prior to the enactment of Act 535 of 1993. Because of the deference this court has given to the General Assembly in matters pertaining to sentencing, *see Cody, supra*, and because Travis fails to cite an

express rule of this court which conflicts with Ark. Code Ann. § 16-97-103(1), we affirm as to this point.

*Travis v. State*, 328 Ark. at 450, 944 S.W.2d at 99-100.

█ Spann does quote the following language from our opinion in *Andrews v. State, supra*:

> The subject matter [parole eligibility] is entirely alien to a judicial proceeding since it is handled entirely by another department of government, the executive.

*Andrews v. State*, 251 Ark. at 289, 472 S.W.2d at 92. Yet, he makes no constitutional argument about separation of powers but, rather, centers his claim only on the asserted conflict between § 16-97-103(1) and the *Andrews* decision. This court resolved the latter issue in *Travis v. State, supra*. The point is without merit.

For his second point, Spann claims that the heated argument that ensued in the minutes prior to the shooting justified the proffered voluntary manslaughter instruction. The State counters that there was no rational basis for the instruction.

█ It is reversible error to refuse to give an instruction on a lesser included offense when the instruction is supported by even the slightest evidence. *Brown v. State*, 325 Ark. 504, 929 S.W.2d 146 (1996); *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992); *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980). We will affirm a trial court's decision to exclude an instruction on a lesser included offense only if there is no rational basis for giving the instruction. *Brown v. State, supra*; *Sanders v. State*, 305 Ark. 112, 805 S.W.2d 953 (1991). *Henson v. State*, 296 Ark. 472, 757 S.W.2d 560 (1988).

█ The elements of manslaughter set out in Spann's proffered instruction are that the defendant caused the death of another while "under the influence of extreme emotional disturbance of which there was a reasonable excuse." *See also* Ark. Code Ann. § 5-10-104(a)(1) (Repl. 1993). We have held that it is not error to refuse to give an instruction on manslaughter where there is no evidence of extreme emotional disturbance. *Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996); *see also Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996). For example, in *Allen v.*

*State*, 310 Ark. 384, 838 S.W.2d 346 (1992), we held that there was no rational basis for giving the manslaughter instruction where the appellant chased down the victim after the victim hit the car of the appellant's friend.

Similarly, in *Frazier v. State*, 309 Ark. 228, 828 S.W.2d 838 (1992), this court held that there was no rational basis for the manslaughter instruction where the proof was that the victim had teased the appellant for urinating on himself. The appellant had said that he was tired of the victim's "messing" with him and that he was going to kill him. The appellant later shot the victim and continued to shoot at the victim as he ran away. Again, while there was proof of a lost temper, there was no proof of emotional disturbance.

■ On the other hand, in *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992), we reversed the appellant's conviction due to the failure of the trial court to give the requested manslaughter instruction. In *Rainey*, the appellant shot his lover during a heated argument in which the victim threatened to divulge their relationship to the appellant's wife and family. The appellant testified that he was hysterical and that he shot the victim out of anger after she reached for his gun and caused it to discharge. We concluded that this evidence was enough to warrant the manslaughter instruction. We stated:

> The *Frazier* case is readily distinguishable from this one. Here, evidence indicated that Rainey had been threatened with a gun before the killing occurred which, combined with the ongoing argument and the threat to ruin his family relationship, could well have been considered by the jury to have caused him to suffer extreme emotional distress, especially when viewed from his perspective as the statute requires. There is a substantial difference between the emotional effect of being teased and being threatened with a gun.

*Rainey v. State*, 310 Ark. 423, 837 S.W.2d 455. We then quoted the following from an earlier decision:

> The passion that will reduce a homicide from murder to manslaughter may consist of anger or sudden resentment, or of fear or terror; but the passion springing from any of these causes will not

alone reduce the grade of the homicide. There must also be a provocation which induced the passion, and which the law deems adequate to make the passion irresistible. An assault with violence upon another who acts under the influence thereof may be sufficient to arouse such passion.

*Rainey v. State*, 310 Ark. at 423, 837 S.W.2d at 455, *quoting Wootton v. State*, 232 Ark. 300, 337 S.W.2d 651 (1960).

 In the present case, there was proof of intense anger on the part of Spann after the victim, who purportedly had been drinking, accused Spann's son of theft and demanded retribution from Spann. But there was no proof of provocation in the form of physical fighting, a threat, or a brandished weapon. Indeed, Spann's counsel at oral argument did not dispute the fact that Spann placed the pocketknife in Ahrens's hand after the shooting. Anger alone is not enough to support the element of extreme emotional disturbance. The trial court correctly refused to instruct on manslaughter under these facts.

The record has been reviewed for reversible error in accordance with Ark. Sup. Ct. R. 4-3(h), and none has been found.

Affirmed.